# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 10, 2020   Decided February 9, 2021

No. 19-7065

DARRELL WILCOX AND MICHAEL MCGUIRE, INDIVIDUALLY
AND AS REPRESENTATIVES OF A CLASS OF PARTICIPANTS AND
BENEFICIARIES IN AND ON BEHALF OF THE GEORGETOWN
UNIVERSITY DEFINED CONTRIBUTION RETIREMENT PLAN AND
THE GEORGETOWN UNIVERSITY VOLUNTARY CONTRIBUTION
RETIREMENT PLAN,
APPELLANTS

v.

GEORGETOWN UNIVERSITY, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00422)

———

*John J. Nestico* argued the cause for appellants. With him
on the briefs were *Todd S. Collins* and *Eric Lechtzin.*

*Brian D. Netter* argued the cause for appellees. With him
on the brief were *Eric A. White* and *Nancy G. Ross.*

Before: ROGERS and RAO, *Circuit Judges*, and RANDOLPH,
*Senior Circuit Judge*.

2

Opinion for the Court by *Circuit Judge* ROGERS.

Dissenting opinion by *Senior Circuit Judge* RANDOLPH.

ROGERS, *Circuit Judge*:  When appellants sought to bring individual and class action claims against Georgetown University retirement plans, the district court dismissed their complaint without prejudice.  The district court also denied as untimely their motion for leave to file an amended complaint.  They appeal and the University responds that the appeal is untimely because the dismissal was a final appealable order that triggered their time to appeal, which expired before appellants noted an appeal.  Dismissal of a complaint without prejudice is generally not a final appealable order, but exceptions apply where the record clearly indicates that the district court has separated itself from the case.  For the following reasons we hold the district court erred when it denied appellants leave to file their amended complaint on the ground that it had previously entered a final judgment in their case.  Accordingly, because the district court had not entered final judgment when it dismissed appellants' complaint, we remand the case to the district court for renewed consideration of their motion and do not reach appellants' challenges to the dismissal of their complaint.

**I.**

Darrell Wilcox and Michael McGuire are participants in retirement plans for faculty and staff of Georgetown University.  They sued the University and individual fiduciaries of these plans (hereinafter, "the University"), seeking to bring individual and representative class action claims for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461.  Compl. ¶¶ 1, 22–26, 114–18.  They alleged,

among other things, that the University plans paid excessive fees for recordkeeping services and included investment options that consistently underperformed their benchmarks. Compl. ¶¶ 3–11. For instance, concerning the recordkeeping fees, the complaint alleged that the plans paid hundreds of dollars in annual fees for each participant when a reasonable annual price for the services provided would have been $35. Compl. ¶¶ 53–54. The University moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), attaching a proposed order for dismissal with prejudice.

On January 8, 2019, the district court dismissed the complaint without prejudice. The district court ruled that appellants lacked Article III standing as to some aspects of plan management, such as the inclusion of investment options neither appellant had selected. *Wilcox v. Georgetown Univ.*, 2019 WL 132281, at *8–10 (D.D.C. Jan. 8, 2019); FED. R. CIV. P. 12(b)(1). Regarding the duty of prudence, the district court found that appellants' excessive recordkeeping fees allegations failed to state a claim upon which relief could be granted because they provided "no factual support at all for their assertion that the Plans should pay only $35/year per participant." *Id.* at *12. That is, appellants challenged "the fundamental structures of the Georgetown Plans" without citing any example of a college or university continuing the same offerings at the reduced price, and that their theory the University could do so was "entirely speculative, contrary to caselaw and common sense, and does not warrant discovery." *Id.* at *12–13; FED. R. CIV. P. 12(b)(6). By order, the district court dismissed the complaint without prejudice. The electronic docket entry for the order read, in relevant part, "See Order for details. This case is closed."

On February 7, 2019, appellants moved for leave to amend their complaint, pursuant to Federal Rule of Civil Procedure 15(a), attaching a proposed amended complaint. The district court denied the motion by Order of May 29, 2019. The court explained that because its order in January had entered judgment in the case, appellants could no longer properly seek leave to amend under Rule 15(a), *Wilcox v. Georgetown Univ.*, 2019 WL 2289631, at *3 (D.D.C. May 29, 2019), and their motion did "not survive analysis under Federal Rules of Civil Procedure 59(e) or 60(b)," *id.* at *1, as it was untimely under the former and lacked a proper basis for relief under the latter, *id.* at *4–5. On June 27, 2019, appellants filed a notice of appeal from the January 2019 memorandum opinion and order, and from the May 2019 denial of leave to file an amended complaint.

## II.

As a threshold matter, the University maintains this appeal should be dismissed for lack of jurisdiction. It argues that because the district court had closed the case in January 2019, appellants had to note their appeal within 30 days of that order, which they failed to do. Notably, the jurisdictional and the merits issues turn on whether the January dismissal order constituted a final judgment. If it did, then this court lacks jurisdiction over the untimely appeal. If it did not, then this court has jurisdiction over the timely appeal, and the district court erred by relying on its January dismissal in rejecting appellants' attempt to amend their complaint.

Courts of Appeals have jurisdiction over appeals from "final decisions" of the district courts. 28 U.S.C. § 1291. Federal Rule of Appellate Procedure 4(a), in turn, requires that a notice of appeal in a civil case be filed "within 30 days after entry of the judgment or order appealed from." A "judgment,"

as the term is used in the Federal Rules of Civil Procedure, is simply "any order from which an appeal lies." FED. R. CIV. P. 54(a). For litigants to determine when it is time to notice an appeal, they must be able to ascertain when a district court has reached a "final decision" within the meaning of § 1291. When a final judgment has been entered, Federal Rule of Civil Procedure 58(a) directs that any judgment "be set out in a separate document," subject to exceptions not applicable here. *See also Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 384–85 (1978).

Generally, a dismissal of a complaint without prejudice is not a final appealable order. Because the dismissal does not constitute entry of a final judgment, the complaint may be amended pursuant to Rule 15(a) of the Federal Rules of Civil Procedure without filing a motion pursuant to Rules 59(e) or 60(b). This has long been the law in this and other circuits. *See, e.g.*, *Ciralsky v. CIA*, 355 F.3d 661, 666 (D.C. Cir. 2004); *Moya v. Schollenbarger*, 465 F.3d 444, 448–49 (10th Cir. 2006); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003); *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066–67 (4th Cir. 1993); *California v. Harvier*, 700 F.2d 1217, 1218 (9th Cir. 1983). By contrast, dismissal of an "action" or "case" is presumptively final, whether with or without prejudice. *Ciralsky*, 355 F.3d at 666. Other circuits view any dismissals as presumptively final and appealable "absent some retention of jurisdiction such as an invitation to amend the complaint." *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 104 (2d Cir. 2005); *see also Quartana v. Utterback*, 789 F.2d 1297, 1299–300 (8th Cir. 1986). Even under this circuit's approach there are well-defined circumstances where a dismissal of a complaint without prejudice is a final appealable order.

The clearest signal of finality is when a district court itself states that its dismissal is with prejudice and its order states the order of dismissal is final and appealable.  No magic words are required, however.  For example, in *St. Marks Place Housing Co. v. U.S. Department of Housing & Urban Development*, 610 F.3d 75 (D.C. Cir. 2010), the district court's order stated that the defendants' motion to dismiss was granted and the case was closed, but that its order should "not be deemed a final Order subject to appeal until the Court has issued its Memorandum Opinion."  *Id.* at 79.  Once the opinion issued over two months later, the plaintiffs filed a notice of appeal.  *Id.* at 79–80.  Taking the district court at its word, this court held the appeal was timely because the district court did not issue its final decision for the purpose of § 1291 until it issued its opinion.  *Id.* at 80.

Similarly, in *Murray v. Gilmore*, 406 F.3d 708 (D.C. Cir. 2005), the district court granted the defendant's motion for summary judgment except as to a due process claim.  *Id.* at 712.  Finding it difficult to understand the plaintiff's basis for the due process claim, the court dismissed that claim "without prejudice subject to reconsideration at such time as plaintiff is able to clearly identify legal and factual bases for proceeding on [the] claim."  *Id.* (citation omitted).  The district court also ordered the case "taken off the active calendar of the Court."  *Id.*  Upon denial of its motion to reinstate the due process claim, the plaintiff appealed.  This court held that the order granting partial summary judgment and dismissing the due process claim was not final despite the direction to remove the case from the active calendar, because the district court had "plainly contemplated" the possibility of further amendment to the complaint.  *Id.* at 712–13.  Because that earlier decision was not final, the court held the plaintiff's appeal from the denial of the motion to reinstate the due process claim was timely.  *Id.*

Absent a clear statement by the district court disassociating itself from the case, *see Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 408–09 (2015), this court has identified certain markers as signaling whether an order is final. In *Ciralsky*, 355 F.3d at 666, the court contrasted a district court order granting dismissal without prejudice of an "action" or "case" with a dismissal without prejudice of the "complaint." The former indicated an intent by the district court to separate itself from the case while the latter typically left open the possibility that the complaint could still be amended to cure deficiencies. *Id.* Other indicia could, of course, still signal finality. *Id.* at 666–67. Thus, in *Ciralsky*, the court concluded that although the order simply stated "the complaint" was dismissed, the dismissal was a final appealable order for three reasons. First, the district court's order "expressly stated that it was 'a final appealable order.'" *Id.* at 667. Second, the district court granted defendants' motion to dismiss, which had sought dismissal of the "action." *Id.* Third, the district court had previously warned the plaintiffs when it granted a motion to strike the complaint that a failure to file a proper amended complaint would result in dismissal of the "case." *Id.*

Additionally, this court's contextual approach has recognized that "apparently definitive dismissal language — like 'ORDERED that this case is closed' — does not always signal finality." *St. Marks*, 610 F.3d at 80. District courts are periodically required to publicly report the number of motions that remain pending for longer than six months and the number of cases that remain open longer than three years. 28 U.S.C. § 476(a). In *St. Marks*, the record was "quite clear that the district court 'closed' the case for reporting purposes only." 610 F.3d at 81. This court also noted the Supreme Court's instruction: "[I]n applying Federal Rule of Civil Procedure 58's requirement that judgments be set out in a separate document . . . 'the rule should be interpreted to prevent loss of

the right of appeal, not to facilitate loss.'"  *Id.* (alterations omitted) (quoting *Bankers Tr. Co.*, 435 U.S. at 386).  This court concluded in *St. Marks* that "[b]ecause the separate document rule [in Rule 58] and section 1291 work together to determine the timing of appeals, . . . the same principle should apply to questions of finality."  *Id.*

The court has also adopted a presumption of finality for jurisdictional dismissals of complaints.  In *Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017), the district court ruled that the plaintiffs lacked standing and ordered that the "complaint be dismissed without prejudice."  *Id.* at 623.  This court held the dismissal was a final order from which the plaintiffs had properly appealed.  *Id.* at 625.  The court explained:

> To accommodate both the rule that a dismissal for lack of subject-matter jurisdiction ordinarily ends the action and the need to respect the intentions of the district court that entered the order, we will presume, absent a clear indication to the contrary, that a dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is a final, appealable order.

*Id.* at 624.

Most recently, in *North American Butterfly Ass'n v. Wolf*, 977 F.3d 1244 (D.C. Cir. 2020), the court held that it had jurisdiction where the district court "announced that 'defendants' motions to dismiss are GRANTED, and this case is DISMISSED,'" *id.* at 1253 (citation omitted), and by order stated it was dismissing "the constitutional claims without prejudice for failure to state a claim and the statutory claims with prejudice for lack of subject-matter jurisdiction," *id.* (citation omitted).  The district court "separately wrote a minute order on its docket sheet granting the Butterfly

Association unsolicited 'leave to file a second amended complaint . . . , if any, within 14 days of the date of this Order.'" *Id.* at 1254 (citation omitted). Eighteen days later, when no such complaint had been filed, the plaintiff appealed. *Id.* at 1252. The court held it had jurisdiction because the district court had entered a final decision. *Id.* at 1254–57.

As the foregoing cases amply demonstrate, "it is not always clear whether a district court intended its order to dismiss the action or merely the complaint." *Ciralsky*, 355 F.3d at 667. Even where a district court's order states that it is dismissing the *complaint* without prejudice, that can be a final decision if there are other sufficiently clear record indicia that it intended to dismiss the *case* or *action*. *See id.* at 667–68; *Attias*, 865 F.3d at 623–24.

**B.**

The district court's January Order was, on its face, a without-prejudice dismissal of appellants' complaint. The question, therefore, is whether there are other indicia in the record that the district court had withdrawn from the case as a whole such that a Rule 15(a) amendment would not be available.

None of the markers that this court has identified as sufficient indicia of such finality are present here. The district court did not state in either its January Order or memorandum opinion that amendment of the complaint would be futile. The Order did not state that it was final and appealable. *Cf. Ciralsky*, 355 F.3d at 667. The January memorandum opinion did not state that "the case" or "the action" was dismissed. *Cf. id.* at 666; *N. Am. Butterfly Ass'n*, 977 F.3d at 1253. Nor did the accompanying Order state that it was dismissing all of the plaintiffs' "claims." *Cf. N. Am. Butterfly Ass'n*, 977 F.3d at

1253. The district court's dismissal was not wholly for lack of subject-matter jurisdiction. *Cf. Attias*, 865 F.3d at 625. Nor did the University's motion request dismissal of the "action." *Cf. Ciralsky*, 355 F.3d at 667.

The University maintains that this court should conclude the January Order was a final decision triggering appellants' time to file an appeal, because (1) it dismissed the complaint in full, leaving no claim unaddressed, (2) the electronic docket entry for the Order stated "this case is closed," (3) the January memorandum opinion expressed skepticism towards appellants' overall theory, and (4) the May memorandum opinion stated that the district court had dismissed the action in its January Order, thereby disassociating itself from appellants' case.

The first reason is easily dispensed with. Of course, an order that does *not* dispose of all the pleaded claims is generally not a final decision subject to appeal. *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1026 (D.C. Cir. 2020); *see also Murray*, 406 F.3d at 712. But this court made clear in *Ciralsky*, 355 F.3d at 666–67, that an order stating the complaint is dismissed in full is generally not, without more, a final decision. The fact that the January Order addressed all portions of the complaint is therefore insufficient to make it final. Notably as well, the district court did not adopt the text of the University's proposed order to dismiss the complaint with prejudice.

As for the docket entry, it adds little. Docket entries kept by the Clerk of Court are required to "briefly show . . . the substance and date of entry of each order and judgment," FED. R. CIV. P. 79(a)(3); they are not authorized to alter or amplify that substance. As has long been understood, where there is a signed order of the district court, "this is *prima facie* the

decision or judgment rather than a statement in an opinion [which is not a part of the record proper] or a docket entry." *O'Brien v. Harrington*, 233 F.2d 17, 19 (D.C. Cir. 1956) (alteration in original) (quoting *United States v. Hark*, 320 U.S. 531, 534 (1944)); *see also Furnace v. Bd. of Trustees of S. Ill. Univ.*, 218 F.3d 666, 669 (7th Cir. 2000). Electronic filings have somewhat blurred the line, and neither party cites a local rule clarifying the manner in which docket entries are generated or should be interpreted by litigants. Some of our sister circuits have been reluctant to find finality based on a docket entry where the record would not otherwise indicate a final decision, essentially because such entries are produced administratively and do not themselves constitute signed judicial orders. *See Witasick v. Minn. Mut. Life Ins. Co.*, 803 F.3d 184, 188–89 (3d Cir. 2015); *United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 670 (7th Cir. 2014); *Filanto, S.p.A. v. Chilewich Int'l Corp.*, 984 F.2d 58, 61 (2d Cir. 1993); *C.I.T. Fin. Serv. v. Yeomans*, 710 F.2d 416, 416–17 (7th Cir. 1983). A leading commentator describes the administrative termination of cases as "a source of ambiguity" that "may suggest appeal finality in circumstances that do not warrant appeal." 15A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 3914.6 (2d ed. 2020). This court's precedent, which looks to the proceedings before the district court judge, also does not embrace the notion that a statement in a docket entry can alone make a non-final order final.

Regardless, the probative value of the docket entry here is limited by its own terms. The closure of a case does not always indicate that the district court has reached a final decision. As discussed in *St. Marks Place*, a case may be closed for administrative purposes even when the district court has not yet entered a final appealable order. 610 F.3d at 81; *see also Psara Energy, Ltd. v. Advantage Arrow Shipping, L.L.C.*, 946 F.3d 803, 807–08 (5th Cir. 2020) (order administratively closing

case was nonfinal); *Weber v. McGrogan*, 939 F.3d 232, 236–37 (3d Cir. 2019) (no final decision despite docket entry stating "Civil Case Terminated"); *Campbell-McCormick, Inc. v. Oliver*, 874 F.3d 390, 395 & n.4 (4th Cir. 2017) (order that did not resolve all claims was not rendered final by administrative closure of the case); *Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 111 (2d Cir. 2014) (similar). Even setting aside the general ambiguity that may attach to case closures, the specific text of the docket entry here sent mixed signals to the parties. On the one hand, it stated the case was "closed"; on the other hand, it instructed the parties to "see" the underlying order for "details" and that Order said nothing about closing the case. Neither did the January memorandum opinion. For these reasons, then, the docket entry was insufficient to render the January Order final and appealable.

Neither can the absence of an express reference by the district court to the possibility of a successful amendment to the complaint provide the requisite clarity here. Such explicit contemplation of an amendment was key to our decision in *Murray*, 406 F.3d at 712–13, that the district court's order was nonfinal. Further, the University's suggestion that the January memorandum opinion "made it abundantly clear that [the district court] viewed the entire premise of [appellants'] suit . . . as resting on faulty logic," Appellees' Br. 29, can take it only so far. The district court never stated on the record that "the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make," *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 790–91 (7th Cir. 2004) (quoting *Furnace*, 218 F.3d at 670). The district court's skepticism about aspects of appellants' case was confined to the factual allegations in the complaint before it. It nowhere hypothesized about the futility of potential amendments; indeed, its comments highlighted the absence of particular facts that would have supported appellants' theory.

That is the sort of problem that could potentially be cured by an amended complaint.

It is true that in its May memorandum opinion the district court stated that the January Order had "dismissed the Complaint and the action." *Wilcox*, 2019 WL 2289631, at *3. A separate Order stated, "This case remains closed." Those documents, the University urges, reveal that the district court intended to dismiss appellants' action and issue a final decision in January 2019. But all this occurred long after appellants' time to note an appeal had expired. Adopting the University's position would mean that a nonfinal order can be rendered final by statements the district court makes months later, long after a party's time to appeal has run. Such a result would be inconsistent with the Federal Rules of Procedure and judicial precedent seeking to ensure that litigants receive clear notice of when their time to appeal begins to run. *See* FED. R. CIV. P. 58 advisory committee's note to 1963 amendment; *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988). Consequently, the finality of a district court's decision must be reasonably apparent based on information available to the litigants when the time to appeal begins to run. *Cf. Hentif v. Obama*, 733 F.3d 1243, 1249–50 (D.C. Cir. 2013).

Collectively, then, the record failed to alert appellants in January that the district court had separated itself from their case and entered a final judgment. Neither the January Order, its docket entry, nor the January memorandum opinion provided a clear indication that the district court had reached a final decision from which an appeal could properly be taken. The January Order itself referred only to dismissal of "the complaint" without prejudice, which generally conveys nonfinality. *Ciralsky*, 355 F.3d at 666. The docket entry and the January memorandum opinion muddied the waters by giving appellants mixed signals about whether their right of

appeal was triggered in January.  Appellants could have filed a protective notice of appeal, *cf. Hentif*, 733 F.3d at 1250, or sought clarification from the district court, *cf. Dubicz*, 377 F.3d at 792, in view of ambiguity about the finality of the January Order.  Indeed, a number of actions could have obviated the need to expend time and resources litigating questions of finality.  But the University, which maintains that because appellants failed to take such protective action ambiguity should be resolved against them, supposes a burden on litigants that neither the Federal Rules of Civil Procedure nor this court's precedent contemplate.

For these reasons, we hold that the January Order was not final; only the May Order was.  The May Order stated that appellants' Rule 15(a) motion for leave to file an amended complaint was denied, and disassociated the district court from their case.  Because the notice of appeal was filed within 30 days of the May Order, it was timely and this court has jurisdiction.

Our dissenting colleague opts for a different approach than this court has chosen, positing that there is no difference between dismissing a "complaint" and dismissing a "case" or all the "claims."  Dis. Op. 4, 6.  Yet the court in *Ciralsky* observed that "courts often regard the dismissal without prejudice of a *complaint* as not final," 355 F.3d at 666 (emphasis in original), and reiterated in *North American Butterfly Ass'n*, that "[o]ur scrutiny of a without-prejudice dismissal often focuses on whether the district court dismissed the entire 'case' or just the 'complaint,'" 977 F.3d at 1253.  Unlike here, in *North American Butterfly* the district court expressly stated the "case" was dismissed.  *Id.*  Absent *en banc* review, this distinction is the law of the circuit, by which this three-judge panel is bound.  *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996).  *United States v. Wallace &*

*Tiernan Co.*, 336 U.S. 793 (1949), requires no different result. See Dis. Op 6. There, the Court held that it had appellate jurisdiction where the district court entered an order "*dismissing the action* without prejudice," *id.* at 794 n.1 (emphasis added), because that order had "ended this suit so far as the District Court was concerned," *id.* Additionally, our dissenting colleague misperceives the effect of the clerk's docket entry, Dis. Op. 2–3, 5, 11, insofar as the entry's critical text that the case was "closed" appears nowhere in the January Order or memorandum opinion of the district court. Nor was this docket entry a "text-only docket entry for which . . . no PDF document will be issued and the text order shall constitute the Court's only order on the matter," *Witasick*, 803 F.3d at 189 (quoting the ECF User Manual for the District of New Jersey); *see also Weber*, 939 F.3d at 237 (relying on *Witasick*). Rather it was a ministerial entry of the sort required by Federal Rule of Civil Procedure 79 to "briefly show the nature" of the underlying order and here instructed the parties to "[s]ee" that Order "for details," and so could not transform the Order into a final judgment.

## III.

The district court concluded in May that because judgment had been entered by the January Order, appellants could no longer seek leave to amend their complaint pursuant to Rule 15(a)(2). But because the January Order did not enter a final, appealable judgment, the district court erred when considering appellants' motion to amend their complaint in refusing to apply the Rule 15(a)(2) standard, rather than the more restrictive standards under Rules 59(e) and 60(b). *See generally Trudel v. SunTrust Bank*, 924 F.3d 1281, 1287 (D.C. Cir. 2019). In this circumstance, as the University suggests, it is appropriate to remand for the district court to decide, in the exercise of its discretion, whether to grant appellants' motion.

Accordingly, we vacate the denial of appellants' motion for leave to amend their complaint and remand the case to the district court to consider whether to grant leave for appellants to file their proposed amended complaint. There is no need now for this court to address either appellants' challenges to the district court dismissal of their initial complaint or the University's contention that the proposed amendments would be futile, for the district court can address that matter in the first instance.

RANDOLPH, *Senior Circuit Judge*, dissenting,

"The law of federal appellate jurisdiction is widely regarded as a mess,"[1] a "tangle."[2]

This case presented our court with an opportunity to clear things up a bit, but the majority opinion has made matters worse.

On January 8, 2019, District Judge Collyer dismissed the plaintiffs' complaint without prejudice for "lack of subject-matter jurisdiction," Fed. R. Civ. P. 12(b)(1), and for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). This was a "final decision" under 28 U.S.C. § 1291, giving the plaintiffs thirty days to appeal.[3] The deadline came and went.[4]

But the majority decides that the countdown never began because Judge Collyer's judgment was not a "final decision." That is so, the majority claims, (1) because Judge Collyer did not "intend" to issue a final decision; (2) because Judge Collyer only dismissed the "complaint," not the "action"; (3) because even after Judge Collyer dismissed the complaint, the plaintiffs

---

[1] Bryan Lammon, *Finality, Appealability, and the Scope of Interlocutory Review*, 93 Wash. L. Rev. 1809, 1810 (2018).

[2] Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3914.1 (2d ed.).

[3] Under 28 U.S.C. § 2107(a), "no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree." *See also* Fed R. App. P. 4(a)(1)(A).

[4] The court of appeals lacks jurisdiction over an appeal if the notice of appeal was not timely filed. *See Bowles v. Russell*, 551 U.S. 205, 214 (2007).

could have amended their complaint; and (4) because precedents of our court support the majority's decision.

I will take up these four points in that order. Each is deeply flawed and quite mistaken.

I.

My first objection is to the majority's treatment of the district court's "intent."

What has a district court's "intention" to do with appellate jurisdiction? A footnote in a Supreme Court opinion states that it matters "whether the district court intended the judgment to represent the final decision in the case." *Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 385 n. 6 (1978) (per curiam). This footnote may not have been a holding, but our court seems to have viewed it as such. *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C. Cir. 2017) (citing *Ciralsky v. CIA*, 355 F.3d 661, 667–68 (D.C. Cir. 2004)).

Here, the record leaves no doubt that Judge Collyer meant to bring this case to an end on January 8, 2019. Although not required to do so, Judge Collyer issued a comprehensive opinion on that date explaining why she was dismissing not just part, but all of the complaint under Rules 12(b)(1) and 12(b)(6).[5] Then, in compliance with Rule 58(a), Judge Collyer issued the Order set forth in the margin.[6] On the same day, a clerk entered the

---

[5] Under Fed. R. Civ. P. 52(a)(3), district court judges are "not required to state findings or conclusions when ruling on" Rule 12(b) motions.

[6] "For the reasons stated in the Memorandum Opinion issued contemporaneously with this Order, it is hereby

following on the civil docket, as Rule 79(a)(1) required: "ORDER granting Motion to Dismiss. See Order for details. This case is closed. Signed by Judge Rosemary M. Collyer on 1/8/2019. (lcrmc1) (Entered: 01/08/2019)." J.A. 8.

On May 29, 2019, Judge Collyer issued another opinion and order, this time rejecting plaintiffs' motion to amend the complaint that she had dismissed in January. In this ruling, Judge Collyer reiterated that her January 8 Order, as entered on the civil docket above her signature, ended the case and so she had "disassociated" from it.[7] J.A. 525. Judge Collyer's order denying the motion stated: "This case remains closed." J.A. 531.

In a classic example of Orwellian "doublespeak,"[8] the majority opinion asserts that Judge Collyer — in ordering that the "case is closed" and, later, that the "case remains closed" — meant that the "case is *not* closed." The absurdity of this assertion speaks for itself.

It will come as no surprise that nothing else in Judge Collyer's orders, or in her opinions, raises any doubt about her

---

ORDERED that Defendants' Motion to Dismiss, Dkt. 18, is GRANTED; and it is

FURTHER ORDERED that the Complaint, Dkt. 1, is dismissed without prejudice." J.A. 385.

[7] A final decision under § 1291 is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945).

[8] *E.g.*, "WAR IS PEACE, FREEDOM IS SLAVERY." George Orwell, *1984* (1949), in *Animal Farm & 1984*, at p. 112 (2003 C. Hitchens ed.).

intention. And in this regard Judge Collyer is in good company: legions of opinions from the Supreme Court and this circuit use "case is closed" to signify the obvious — that the case is over, that it has ended, that it is finished.[9]

There is nothing to the majority's claim that the January 8 Order was unclear. There is ambiguity here, but it is in the majority's opinion — not Judge Collyer's. For example, the majority proposes that the January 8 decision was uncertain because the "Order [did not] state that it was dismissing all of the plaintiffs' 'claims.'" Majority Op. 9.

Stuff and nonsense. A "claim," in the Federal Rules of Civil Procedure, is what a complaint puts forward (or is supposed to). *See* Rule 8(a) (entitled "Claim for Relief"). Without a complaint there can be no claim. Judge Collyer's order dismissing the complaint necessarily dismissed all of the claims contained in the complaint. For Judge Collyer also to announce that the plaintiffs' claims were dismissed would have

---

[9] *E.g.*, *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009); *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995); *Bruning v. United States*, 376 U.S. 358, 359 (1964); *United States v. Ohio Power Co.*, 353 U.S. 98, 111 (1957) (Harlan, J., dissenting); *Dixon v. Duffy*, 344 U.S. 143, 157 (1952) (Jackson, J., dissenting).

Even the author of today's opinion has used "case is closed" to signify that the case is over. *Mobley v. CIA*, 806 F.3d 568, 575 (D.C. Cir. 2015) (Rogers, J.) ("[T]he FBI case was closed while the CIA case remained open."); *Hentif v. Obama*, 733 F.3d 1243, 1249 (D.C. Cir. 2013) (Rogers, J.) ("The July 27 posting informed parties without equivocation that the district court regards the case as closed and intends that no further action be taken by it, and that the time to appeal has commenced to run." (internal quotation marks and brackets omitted)).

been redundant and would have betrayed the same misunderstanding of federal procedural rules evinced in the majority's opinion.

The majority also suggests that the entry of judgment was somehow irregular — and that we may ignore Judge Collyer's May 29 decision denying any such thing.[10] Circuit law is firmly against both notions. In ruling otherwise, the majority does "violence to the presumption of regularity surrounding all judicial proceedings and record" and improperly "disregard[s] the District Court's subsequent affirmation of regularity." *Weedon v. Gaden*, 419 F.2d 303, 306 (D.C. Cir. 1969).

Here is the bottom line. When Judge Collyer closed this case on January 8, 2019, she intended to end it, and end it she did. By any measure that was a "final decision" under § 1291.[11]

## II.

This brings me to the majority's second rationale, which presents this question: Does a district court's dismissal without prejudice make the court's decision nonfinal under § 1291 because it is without prejudice? The majority thinks so. The Supreme Court does not.

---

[10] The majority dismisses Judge Collyer's later opinion and order on the ground that "a nonfinal order can[not] be rendered final by statements the district court makes months later[.]" Majority Op. 13. This is nothing more than thinly-disguised question-begging. The question is whether the *initial* order was a final decision.

[11] *See, e.g.*, *Acevedo-Villalobos v. Hernandez*, 22 F.3d 384, 389 (1st Cir. 1994) ("Here the complaint was dismissed by the district court for failure to state a claim, and judgment was then entered on the docket and set forth on a separate document in accordance with Fed. R. Civ. P. 58 and 79(a). Accordingly, the dismissal of plaintiffs' complaint possesses all of the markings of a 'final decision.'").

Exactly this question arose in *United States v. Wallace & Tiernan Co.*, 336 U.S. 793 (1949). The Supreme Court's answer should have controlled this appeal: "That the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit so far as the District Court was concerned." 336 U.S. at 794 n.1.[12]

*Wallace* thus holds that a dismissal without prejudice is a final, appealable decision under § 1291. My colleagues seek to avoid *Wallace* by invoking a fiction. The fiction is this: the January 8 decision was not final because the "action" continued after Judge Collyer dismissed the complaint.[13]

Under Rule 3, there can be no action without a complaint. If the complaint is gone, the action is too. There is no accounting for the difference in finality between dismissing a complaint *with* prejudice — which the majority thinks is a final decision — and dismissing a complaint *without* prejudice.

---

[12] As *Wallace* indicates, and as then-Judge Scalia held for this court, dismissal "without prejudice" means that the doctrine of res judicata will not bar a later suit. *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983); *see also Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020); *Elfenbein v. Gulf & W. Indus., Inc.*, 590 F.2d 445, 449 (2d Cir. 1978) (per curiam).

[13] *Wallace* did not create this fiction. "That *the dismissal*" — not of the *action*, or *complaint*, or *claims*, since none of these distinctions matter — "was without prejudice to filing another suit does not make the cause unappealable[.]" 336 U.S. at 793 n.1 (emphasis added); *see* Br. for the U.S., at *14, *United States v. Wallace & Tiernan Co.*, 1949 WL 50582 ("The judgment dismissing the complaint without prejudice is clearly a final judgment since it terminates the cause in which it was entered.").

Judge Collyer dismissed this complaint, in part, for lack of jurisdiction under Rule 12(b)(1). Were the entire complaint dismissed on this ground, that would doubtless be a final, appealable decision under § 1291. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017), holds that when the district court dismisses the complaint without prejudice for lack of subject-matter jurisdiction that is a "final decision" unless the court expressly invites the plaintiff to amend its complaint.[14] (Judge Collyer issued no such invitation.)

There is no rational basis for treating Rule 12(b)(6) dismissals any differently. As I have written, the majority posits that an "action" survives the dismissal of a complaint under Rule 12(b)(6). That is impossible. Rule 12(b)(6) is "the same as the old demurrer for failure of a pleading to state a cause of action." Fed. R. Civ. P. 12 advisory committee's note to 1946 amendment. Little wonder that Supreme Court opinions describe grants of Rule 12(b)(6) motions as dismissals for failure to state "a cause of action." Examples abound in many of the Court's leading cases dealing with complaints and federal civil procedure. *E.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678, 687 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 90, 91, 94, 95, 96, 98 (1998); *Bell v. Hood*, 327 U.S. 678, 680, 682, 683 (1946). Our court has done the same. *E.g., Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

The majority's fiction — that an "action" remains after the district court dismisses the complaint for failing to state one — is the proverbial grin without the cat. "'Well! I've often seen a [complaint] without [a cause of action],' thought Alice; 'but [an

---

[14] As the district court did in *Murray v. Gilmore*, 406 F.3d 708, 712-13 (D.C. Cir. 2005).

8

action] without a [complaint]! It's the most curious thing I ever saw in my life!'" Lewis Carroll, *Alice in Wonderland & Through the Looking Glass* 69 (J. Tenniel illus. 1997).

III.

The majority's other basis for not recognizing finality is this: a dismissal of a complaint without prejudice is not a final appealable order because the complaint may be amended pursuant to Rule 15(a). Majority Op. 5. Of course, the Supreme Court's opinion in *Wallace*, quoted above, flatly contradicts the majority's "rationale." But that is not the only problem.[15] As I will explain next, the majority's reasoning is logically fallacious.

Here is the law. After a district court enters a final decision, the plaintiff is no longer free to amend its complaint under Rule 15(a). No amendment is permitted unless the district court first reopens the judgment. *See, e.g.*, *Firestone v. Firestone*, 76 F.3d 1205, 1208–09 (D.C. Cir. 1996) (per curiam).[16] The plaintiff may move to reopen the judgment, but only if it does so within 28 days of the judgment.[17] Fed. R. Civ.

---

[15] *Elfenbein*, 590 F.2d at 448 ("This circuit has clearly rejected the view that 'without prejudice' means 'with leave to amend.'").

[16] A Rule 59(e) motion "is discretionary" and need not be granted unless the district court finds that there is "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Nat'l Tr. for Hist. Pres. v. Dep't of State*, 834 F. Supp. 453, 455 (D.D.C. 1993) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992), *cert. denied*, 506 U.S. 820 (1992)), *aff'd in part and rev'd in part on other grounds sub nom.*, *Sheridan Kalorama Hist. Ass'n v. Christopher*, 49 F.3d 750 (D.C. Cir. 1995).

[17] The plaintiffs did not do so here.

Pro. 59(e). Only if the district court first grants that motion may the plaintiff move to amend the complaint under Rule 15(a).

Here then is the majority's logical fallacy, the fallacy of circular reasoning. Dismissal of a complaint without prejudice is not a final order, the majority says, because the plaintiffs may amend their complaint under Rule 15(a). And the plaintiffs may amend their complaint under Rule 15(a) because dismissal without prejudice is not a final order.[18]

In short, the third ground for the majority's conclusion regarding finality goes nowhere. It goes round and round, stating in one form or another that $A$ is true because $B$ is true; and $B$ is true because $A$ is true.

IV.

All that remains is circuit precedent. An Addendum to this dissent criticizes the majority's reliance on a case from this circuit and on cases from other circuits. Rather than further recitations about why this case is the same as that, or that case is different from this, I offer the following abbreviated analysis.

Our court has rendered three decisions dealing with "finality" and appellate jurisdiction in the last few years. Today's majority decision is inconsistent with each one of them.

---

[18] There is another problem with the majority's amendment rationale. The premise must be that the plaintiffs, by amending the complaint, could cure the defects that resulted in its dismissal. And so it seems to me that the majority, to determine our appellate jurisdiction, had to decide whether the plaintiffs could save their complaint by amending it. Yet I cannot understand how an appellate court could possibly know the answer. *See, e.g.*, *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 610–11 (4th Cir. 2020); *Furnace v. Bd. of Trs.*, 218 F.3d 666, 670 (7th Cir. 2000).

On February 14, 2019, a month after Judge Collyer issuing her ruling, another district judge, Leon, J., ruled in a different case, dismissing the plaintiffs' constitutional claims "without prejudice" and their statutory claims "with prejudice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020). On appeal, our court held that Judge Leon rendered a "final decision" within the meaning of § 1291. *Id.* at 1254. There is no plausible way to distinguish this case from *Butterfly*. As I discussed earlier, "claims" are what complaints contain.

In the meantime, while this case and *Butterfly* were pending on appeal, our court decided *Reshard v. Stevenson*, 801 Fed. App'x 790 (D.C. Cir. 2020). We treated the district court's dismissal of the *complaint* without prejudice[19] as a "final decision" within the meaning of § 1291, no different than an order "dismissing the case." 801 Fed. Appx. at 791-92.

And several months before this case began, our decision in *Attias* gave the final word on finality. "[A]nything less than an *express* invitation is not a clear enough signal to overcome the presumption of finality." *Attias*, 865 F.3d at 625. The majority opinion mistakenly restricts *Attias* to dismissals of complaints without prejudice pursuant to Rule 12(b)(1). Majority Op. 8; *see Attias*, 865 F.3d at 624 (relying on *Murray v. Gilmore*, 406 F.3d 708, 712 (D.C. Cir. 2005)). What the majority cannot coherently explain is why dismissals of complaints without prejudice pursuant to Rule 12(b)(6) deserve different treatment.

Case closed.

---

[19] The district court had issued the following judgment: "ORDERED that the Amended Complaint is DISMISSED without prejudice." *Reshard v. Stevenson*, No. 18-cv-775 (CRC), 2018 WL 10667526 (D.D.C. Oct. 5, 2018).

**ADDENDUM**

***St. Marks Place Hous. Co. v. U.S. Dep't of Hous. & Urb. Dev.*, 610 F.3d 75 (D.C. Cir. 2010):**

At several points the majority invokes *St. Marks* to show that "the case is closed" may not amount to a "final decision." Majority Op. 7-8. "Pure applesauce." *King v. Burwell*, 576 U.S. 473, 507 (2015) (Scalia, J., dissenting). The majority's use of *St. Marks* is quite misleading. It omits the critical language in the *St. Marks* order – namely, "this Order *shall not be deemed a final Order* subject to appeal[.]" 610 F.3d at 79 (emphasis added). There is nothing of the kind here — nothing to contradict Judge Collyer's "apparently definitive dismissal language" that the "case is closed."

***Weber v. McGrogan*, 939 F.3d 232 (3d Cir. 2019):**

According to the majority, *Weber* shows that docket entries are not necessarily "probative." Majority Op. 11–12. But the majority again breezes past the details. The docket entry in *Weber* was an unsigned "utility event" that was not an order of the district court. 939 F.3d at 237. Compare that to this case, where Judge Collyer issued a "text order" that "contain[ed] [her] electronic signature" — what *Weber* called the "most significant" type of docket entry. *Id.*

***Psara Energy, Ltd. v. Advantage Arrow Shipping*, 946 F.3d 803 (5th Cir. 2020):**

*Psara* is instructive — just not in the way that the majority imagines. The majority cites *Psara* to prove that an order "administratively closing [a] case" may be nonfinal. Majority Op. 11–12. What of it? The district court in *Psara* ordered the case "*administratively* closed[.]" Dkt. 40, *Psara Energy, Ltd. v.*

*Advantage Arrow Shipping*, 1:18-cv-00178-MAC-ZJH (E.D. Tex. Jan. 4, 2019) (emphasis added).  The district court here did not.  Far more telling is the Fifth Circuit's statement that an order "compel[ling] arbitration and dismiss[ing] or *clos[ing] the case outright* possesses finality and confers jurisdiction on [the appellate] court." 946 F.3d at 807 (internal quotation marks omitted) (emphasis added).

### *Campbell-McCormick, Inc. v. Oliver*, 874 F.3d 390 (4th Cir. 2017):

*Campbell-McCormick* — like *Psara* — was "administratively clos[ed]."  Dkt. 106, *Campbell-McCormick, Inc. v. Oliver*, 1:16-cv-01057-CCB (D. Md. July 18, 2016) (capitalization omitted).  This case was not.  So it is neither here nor there that *Campbell-McCormick* "was not rendered final by administrative closure."  Majority Op. 12.

### *Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102 (2d Cir. 2014):

*Mead* does not undermine the "probative value of the docket entry here."  Majority Op. 11–12.  The district court in *Mead* "remanded to the [benefits] plan administrator for further proceedings" and then ordered the case "close[d]." 768 F.3d at 106.  The Second Circuit held that this was not a final order because it "did not conclusively determine" all pending claims. *Id.* at 109 (cleaned up).  At most, then, *Mead* shows that a docket entry cannot render a nonfinal order final.  Yet unlike the order in *Mead*, Judge Collyer's order left no unfinished business.